IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAMES PATE,

      Plaintiff,                              No. CIV S-05-0848 KJM

      vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

      Defendant.                      <u>ORDER</u>

         Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively. For the reasons discussed below, the court will grant plaintiff's motion for remand, deny the Commissioner's cross-motion for summary judgment, and remand this matter for further proceedings.

/////
/////
/////
/////

1

I. <u>Factual and Procedural Background</u>

In a decision dated April 23, 2003, the ALJ determined plaintiff was not disabled.[1] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. The ALJ found plaintiff has severe impairments of blindness of the right eye, moderate recurrent major depressive disorder, and a syncope episode, but these impairments do not meet or medically equal a listed impairment; plaintiff is not totally credible; plaintiff can perform medium work that does not require good depth perception and is limited mentally to performing simple job instructions; plaintiff cannot perform his past relevant work; and using grid rules 203.22 and 203.23, plaintiff is not disabled. Administrative Transcript

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 <u>et seq</u>. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 <u>et seq</u>. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. <u>See</u> 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

<u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. <u>Bowen</u>, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. <u>Id</u>.

2

("AT") 17, 22-23.  Plaintiff contends the ALJ improperly discredited his testimony and ignored lay witness testimony, improperly evaluated whether plaintiff meets or equals a listing, and should have obtained the testimony of a vocational expert.[2]

II. Standard of Review

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).  Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

---

[2] Plaintiff also contends the ALJ should have obtained medical records from prior disability applications.  Plaintiff fails to explain why records for a prior time period are relevant to the issues raised in the application at issue.  Moreover, it is plaintiff's burden to bring forth evidence at steps one through four of the sequential evaluation.  Plaintiff sets forth no reason why, if these records are relevant, they were not sought by plaintiff at the administrative level.

3

III. <u>Analysis</u>

    A. Listings

Plaintiff contends the ALJ erred in failing to find he meets or equals Listing 12.04. The Social Security Regulations "Listing of Impairments" is comprised of impairments to certain specified categories of body systems that are severe enough to preclude a person from performing gainful activity. <u>Young v. Sullivan</u>, 911 F.2d 180, 183-84 (9th Cir. 1990); 20 C.F.R. § 404.1520(d). Conditions described in the listings are considered so severe that they are irrebuttably presumed disabling. 20 C.F.R. § 404.1520(d). In meeting or equaling a listing, all the requirements of that listing must be met. <u>Key v. Heckler</u>, 754 F.2d 1545, 1550 (9th Cir. 1985).

To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim. To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment "most like" the claimant's impairment. 20 C.F.R. § 404.1526. Where more than one impairment is present, but the impairments do not meet or equal a listed impairment, the impairments will be considered in combination to determine whether the combination is medically equal to any listed impairment. <u>Id.</u> The claimant's impairments "must be considered in combination and must not be fragmentized in evaluating their effects." <u>Lester v. Chater</u>, 81 F.3d 821, 829 (9th Cir. 1995) (citations omitted). A finding of equivalence must be based on medical evidence only. 20 C.F.R. § 404.1529(d)(3). A generalized assertion of functional problems is not enough to establish disability at step three. <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1100 (9th Cir. 1999).

/////

/////

/////

Listing 12.04 requires plaintiff meet or equal Parts A and B or Part C.  The ALJ found plaintiff met Part A but not Part B or Part C.  AT 20.  The Part B criteria evaluate the functional loss resulting from an affective disorder and require at least two of the following functional limitations:

> 1. marked restriction of activities of daily living;
>
> 2. marked difficulties in maintaining social functioning;
>
> 3. marked difficulties in maintaining concentration, persistence, or pace; or
>
> 4. repeated episodes of decompensation, each of extended duration.

"Marked" means "more than moderate, but less than extreme." See Listing 12.00(C).

Relying on the opinions of a state agency physician and consulting examining psychologist, the ALJ found plaintiff did not meet or equal the Part B criteria.  AT 20, 221-226, 240, 252.  In doing so, however, the ALJ failed to consider the lay witness evidence of plaintiff's niece.  AT 94-99.  "[L]ay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, and therefore cannot be disregarded without comment."  Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); see also Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993) (friends and family members in a position to observe a plaintiff's symptoms and daily activities are competent to testify to condition).  "If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness."  Dodrill, 12 F.3d at 919.  The evidence from plaintiff's niece supports plaintiff's allegations regarding sleep problems, poor memory and social isolation and cannot be disregarded without comment.  See Schneider v. Commissioner of Social Security, 223 F.3d 968, 975 (9th Cir. 2000) (ALJ must consider third party letters regarding severity of plaintiff's limitations when making Part B determination for mental impairment Listing). The matter therefore will be

5

remanded for consideration of this evidence in evaluating the Part B criteria.

Plaintiff also contends he meets or equals Listings 2.02 or 2.04, which address visual impairments. The ALJ discussed in detail why plaintiff does not meet or equal these Listings and review of the record demonstrates no error in the ALJ's application of the requirements in those Listings. AT 17, 227-229.[3] However, the ALJ failed to consider the evidence in the record that plaintiff does not have glasses to correct his vision in the left eye. AT 29, 101 (plaintiff homeless and without any funds); 112 (plaintiff has no medical assistance card); 227 (plaintiff without glasses for some time). If plaintiff does not have access to corrective lenses, then he meets both Listings 2.02 and 2.04. Cf. Gamble v. Chater, 68 F.3d 319, 322 (9th Cir. 1995) (inability to afford prescribed treatment). The matter will be remanded so that further evidence can be developed in this regard.

B. Credibility

Plaintiff further contends the ALJ improperly discredited plaintiff's own testimony. The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment,

---

[3] Calculating the loss of visual efficiency under Listing 2.04 as $(45 + 70 + 35 + 70 + 35 + 42 + 45 + 55) = 397$ divided by $500 = 0.79 \times 32$ (aphakic monocular percentage of visual acuity efficiency) = 25%. AT 229; see Listing 12.04, Table nos. 1 & 2. Because Listing 12.04 requires a loss of 20 percent or less after best correction, plaintiff does not meet this Listing if glasses are available to plaintiff.

6

the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

In assessing plaintiff's credibility, the ALJ considered several factors. AT 18. While many of these factors were validly considered and supported by the record, others were not. For instance, the ALJ found plaintiff's functional capacity was not eroded by any complaints due to hepatitis C. AT 18. Although the ALJ was correct that plaintiff did not receive treatment for this condition, the ALJ mistakenly observed there was no diagnosis of hepatitis C. The record indicates two positive test results, thus lending support to plaintiff's complaints of fatigue and malaise. AT 166, 181. As noted above, the ALJ also failed to consider the supporting lay witness evidence of plaintiff's niece in assessing plaintiff's testimony. On remand, the ALJ should further assess plaintiff's credibility in light of these factors as well.

C.  Grids

Plaintiff also contends the ALJ erred in not taking the testimony of a vocational expert but instead relying on the grids to find plaintiff was not disabled.  The Medical-Vocational Guidelines ("the grids") are in table form.  The tables present various combinations of factors the ALJ must consider in determining whether other work is available.  See generally Desrosiers, 846 F.2d at 577-78 (Pregerson, J., concurring). The factors include residual functional capacity, age, education, and work experience.  For each combination, the grids direct a finding of either "disabled" or "not disabled."

There are limits on using the grids, an administrative tool to resolve individual claims that fall into standardized patterns:  "[T]he ALJ may apply [the grids] in lieu of taking the testimony of a vocational expert only when the grids accurately and completely describe the claimant's abilities and limitations."  Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5, 103 S. Ct. 1952, 1955 n.5 (1983).  The ALJ may rely on the grids, however, even when a claimant has combined exertional and nonexertional limitations, if nonexertional limitations are not so significant as to impact the claimant's exertional capabilities.[4]  Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on other grounds, Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988); see also Odle v. Heckler, 707 F.2d 439 (9th Cir. 1983) (requiring significant limitation on exertional capabilities in order to depart from the grids).

The ALJ found plaintiff's capacity to perform medium work was not compromised

---

[4] Exertional capabilities are the "primary strength activities" of sitting, standing, walking, lifting, carrying, pushing, or pulling.  20 C.F.R. § 416.969a (b) (2003); SSR 83-10, Glossary; compare Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 6 (9th Cir.1989).
Non-exertional activities include mental, sensory, postural, manipulative and environmental matters that do not directly affect the primary strength activities. 20 C.F.R. § 416.969a (c) (2003); SSR 83-10, Glossary; Cooper, 880 F.2d at 1155 & n. 7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)).  "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have nonexertional (not strength-related) limitations that are not covered by the grids."  Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., pt. 404, subpt. P, app. 2 § 200.00(d), (e)).

by any nonexertional limitations and therefore relied on grid rules 203.22 and 203.23 to find plaintiff was not disabled. AT 23 (Findings no. 13, 14). There is, however, no evidentiary basis upon which this court can affirm this finding. Although the ALJ noted the significant number of unskilled jobs available to plaintiff, which are administratively noticed, there is no evidence that the nonexertional limitations imposed on plaintiff because of his eye impairments do not significantly erode the unskilled job base. AT 21-22. The ALJ expressly found plaintiff could not perform jobs requiring good depth perception. AT 22 (Finding no. 7). Moreover, the ALJ apparently ignored the significant reduction in the visual field of plaintiff's one working eye, which varies between 42 and 75 degrees.[5] AT 227. Reliance on the grids in the face of such a significant nonexertional limitation does not meet the Commissioner's burden at step five of the sequential analysis. The matter will also be remanded so that the testimony of a vocational expert may be obtained.

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and further findings addressing the deficiencies noted above. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for remand is granted;

2. The Commissioner's cross-motion for summary judgment is denied; and

3. This matter is remanded for further proceedings consistent with this order.

DATED: September 26, 2006.

_____
UNITED STATES MAGISTRATE JUDGE

006/pate.ss

---

[5] Even with correction, the visual efficiency of plaintiff's left eye is only twenty-five percent. Although twenty percent is necessary to meet Listing 2.04, a twenty-five percent visual efficiency in plaintiff's only working eye appears to be a significant nonexertional limitation that should be considered at step five.